UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jared Fyle,                                         Case No. 23-cv-3466 KMM/LIB

           Plaintiff,

v.

Tyler Leibfried, acting in his
individual capacity as a Duluth
Police Officer, and the City of Duluth,

           Defendants.

---

## ANSWER OF OFFICER TYLER LEIBFRIED

---

COMES NOW Officer Tyler Leibfried, for his Answer to Plaintiff's Complaint, states and alleges as follows:

1. Unless hereafter admitted, qualified or otherwise answered, this answering party denies each and every thing, matter and particular alleged in Plaintiff's Complaint.

2. To the extent the Complaint quotes or relies on statements in reports, investigation summaries, trial transcripts, video recordings, or other sources, this answering party affirmatively states the source materials speak for themselves, and citation or images of materials in the Complaint does not make

the materials or statements contained in them accurate or admissible as evidence in this case.

3. This answering party specifically denies Plaintiff has stated a cognizable claim for relief under 42 U.S.C. § 1983 and, further, denies Plaintiff sustained any deprivation of rights under the Fourth Amendment or any other common law, state, or federal statutory or constitutional injuries as alleged in Plaintiff's Complaint.

4. This answering party affirmatively alleges at all times material hereto, Officer Jared Leibfried was performing discretionary acts in the scope of his duties with a good faith belief his conduct was lawful, constitutional, proper, and pursuant to probable cause.

5. With respect to paragraphs 1 – 8 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

6. With respect to paragraph 9 of the Complaint, this answering party does not have sufficient information to admit or deny the subjective motivation of the Duluth Police Department or the St. Louis County Attorney and therefore denies and puts Plaintiff to his strict burden of proof. This answering party admits he was charged with discharge of a firearm and second-degree assault, and a jury determined the evidence did not support the charges, acquitting him.

7. With respect to paragraph 10 of the Complaint, this answering party denies the allegations.

8. With respect to paragraph 11 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies and puts Plaintiff to his strict burden of proof.

9. With respect to paragraph 12 of the Complaint, this answering party admits at all times material hereto he was performing discretionary acts in the scope of his duties with a good faith belief his conduct was lawful, constitutional, proper, and pursuant to probable cause. This Defendant denies that his actions were misconduct and therefore puts Plaintiff to his strict burden of proof.

10. With respect to paragraph 13 of the Complaint, this answering party admits the allegations.

11. With respect to paragraphs 14 - 15 of the Complaint, these introductory paragraphs require no response. To the extent a response is required, this answering party denies the allegations.

12. With respect to paragraph 16 of the Complaint, this answering party admits generally federal questions should be resolved in federal court; however, the incident involving Plaintiff did not rise to the level of a constitutional violation and therefore this answering party denies jurisdiction of this Court.

13. With respect to paragraph 17 of the Complaint, this answering party admits responding to Kingsley Heights apartments on September 12, 2020, after numerous residents reported a domestic, hearing things thrown around for half an hour, a woman screaming, and a woman yelling, "Get off me!" in Unit 301.

14. With respect to paragraph 18 of the Complaint, this answering party admits meeting Kosloski outside the entrance of the building, where he observed she was barefoot, crying, her face was red, she did not have her phone, and was clearly upset. This answering party also observed when he asked Kosloski whether something happened or whether there was violence, she responded "he tried to" and she pushed away. This answering party observed Kosloski was hesitant to provide details, so he focused on ensuring she would be separated from the other party for the immediate future. Based on the 911 calls, this answering party knew there was the possibility an assault or injuries occurred, but this information was not yet confirmed outside the apartment building.

15. With respect to paragraph 19 of the Complaint, this answering party admits Officer Lindsholm arrived after Kosloski confirmed no one else was in the apartment except Fyle, and this answering party asked Kosloski, "You guys didn't physically fight or anything like that?" Kosloski responded, "He tried to, but I wasn't going for it. And I left the apartment as soon as I could and I asked for help. I don't want to press any charges."

16. With respect to paragraph 20 of the Complaint, this answering party admits he does not recall any prior incidents with Kosloski or Fyle before September 12, 2020.

17. With respect to paragraph 21 of the Complaint, this answering party admits he did not inquire whether a weapon was involved when Kosloski said "He tried to."

18. With respect to paragraph 22 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof. This answering party further asserts he had knowledge of an unsolved shooting in the building the week before this incident and further asserts the record demonstrates Plaintiff was in fact armed with weapons, including a hatchet, in his apartment.

19. With respect to paragraph 23 of the Complaint, this answering party admits Kosloski informed him Fyle was alone in the apartment.

20. With respect to paragraph 24 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

21. With respect to paragraph 25 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

22. With respect to paragraph 26 of the Complaint, this answering party denies the quotations which are misquoted and taken out of context of

surrounding text and questions on two separate pages and puts Plaintiff to his strict burden of proof.

23. With respect to paragraph 27 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

24. With respect to paragraph 28 of the Complaint, this answering party admits the allegations.

25. With respect to paragraph 29 of the Complaint, this answering party admits the allegations.

26. With respect to paragraph 30 of the Complaint, this answering party admits he initially held a notebook and pen as he walked up the staircase.

27. With respect to paragraph 31 of the Complaint, this answering party admits he did not have a chance to knock on the door of Unit 301 before hearing gun shots, and this answering party anticipated Plaintiff knew police were responding to the domestic.

28. With respect to paragraph 32 of the Complaint, this answering party admits based on his training regarding officer safety, he did not stand directly in front of Unit 301.

29. With respect to paragraph 33 of the Complaint, this answering party admits the screenshot is a view from Officer Lindsholm's BWC video just

seconds before two gunshots are heard on the video and part of Officer Leibfried's head can be seen.

30. With respect to paragraph 34 of the Complaint, this answering party admits Officer Lindsholm expressed concern about the tight space and narrow hallway as he described Officer Leibfried occupying "a little corner around the doorway" and thinking "he should go over that way, and he automatically did right away."

31. With respect to paragraphs 35 - 36 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

32. With respect to paragraph 37 of the Complaint, this answering party admits the gunshot sounds are heard on both officers' BWC video starting at timestamp 02:35:58 and 02:35:59 on the cameras. This answering party further submits he immediately radioed, "26. Shots fired."

33. With respect to paragraph 38 of the Complaint, this answering party admits that after the incident, it was discovered the gunshot sounds were from Fyle hitting the inside of the apartment door with a hatchet, but at the time the officers were present, this answering party believed the officers were being fired upon with a gun.

34. With respect to paragraph 39 of the Complaint, this answering party admits Officer Lindsholm told the BCA he heard two shots ring out from the

apartment and his immediate thought was that someone was shooting at the officers through the door from inside the apartment.

35. With respect to paragraphs 40 - 41 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies and puts Plaintiff to his strict burden of proof.

36. With respect to paragraph 42 of the Complaint, this answering party admits when asked to describe where the sound of gunshots appeared to come from, Officer Lindsholm said "it sounded like it was coming from that apartment."

37. With respect to paragraph 43 of the Complaint, this answering party admits he subsequently learned Officer Lindsholm ran down the hallway away from the gunshots and took cover in a perpendicular hallway. This answering party further asserts he initially thought Officer Lindsholm was shot.

38. With respect to paragraph 44 of the Complaint, this answering party admits Officer Lindsholm's BWC video shows him in the perpendicular hallway with his gun drawn at 2:36:04 as shown in the screenshot.

39. With respect to paragraph 45 of the Complaint, this answering party admits his BWC video shows him in the alcove at 2:36:04 as shown in the screenshot and that the apartment door remained closed. This answering party

admits he tried to get cover in the alcove but denies he had sufficient cover from the apartment in the alcove.

40. With respect to paragraph 46 of the Complaint, this answering party admits the allegations.

41. With respect to paragraph 47 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

42. With respect to paragraph 48 of the Complaint, this answering party admits appoximately 12 seconds passed between the two gunshot sounds, radioing "26. Shots fired," hearing a voice inside the apartment repeat, "Shots fired," hearing a racking noise like someone was going to fire again, and this answering party firing his gun into the apratment due to his reasonably perceived threat of death or serious bodily harm to himself and others.

43. With respect to paragraph 49 of the Complaint, this answering party admits he heard a metal-on-metal sound he believed to be the racking of a gun preparing to shoot again.

44. With respect to paragraph 50 of the Complaint, this answering party admits his BWC reflects Officer Lindsholm calling to him but denies Plaintiff's characterization of the audio and further denies hearing Officer Lindsholm calling to him at that time.

45. With respect to paragraph 51 of the Complaint, this answering party admits Plaintiff has copied and pasted a portion of Officer Lindsholm's BCA statement in which he explained his fear regarding Officer Leibfried's lack of cover in the alcove from someone shooting from the apartment.

46. With respect to paragraph 52 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

47. With respect to paragraph 53 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

48. With respect to paragraph 54 of the Complaint, this answering party admits the allegations.

49. With respect to paragraph 55 of the Complaint, this answering party admits he did not say anything to Plaintiff between the fourth shot and the remaining two shots.

50. With respect to paragraph 56 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

51. With respsect to paragraph 57 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

52. With respect to paragraph 58 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies and puts Plaintiff to his strict burden of proof.

53. With respect to paragraph 59 of the Complaint, this answering party denies the allegations.

54. With respect to paragraph 60 of the Complaint, this answering party admits the allegations.

55. With respect to paragraph 61 of the Complaint, this answering party admits after he fired, he radioed to "start medical" and ran to take cover down the hallway.

56. With respect to paragraph 62 of the Complaint, this answering party denies the allegations.

57. With respect to paragraph 63 of the Complaint, this answering party denies the allegations.

58. With respect to paragraph 64 of the Complaint, this answering party denies the allegations.

59. With respect to paragraph 65 of the Complaint, this allegation appears to be directed to a different Defendant and requires no response from this Defendant. To the extent a response is required, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

60. With respect to paragraph 66 of the Complaint, this answering party admits he was part of a large-scale response to a domestic assault call on January 13, 2019 involving a weapon, in which officers saw the suspect with a gun, and

the suspect shot at officers through a door. This answering party further admits he felt the bullets fired by the suspect pass close by him, and his partner and partner's K-9 were struck just two to three feet from him. This answering party pulled his partner to the ambulance, while remaining under continuing threat of further fire from the suspect.

61. With respect to paragraph 67 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies the same and puts Plaintiff to his strict burden of proof.

62. With respect to paragraph 68 of the Complaint, this answering party admits he testified, "This is January 13, 2019 all over again," when asked, "What were you thinking about when you heard those two sounds?"

63. With respect to paragraph 69 of the Complaint, this answering party admits he referred to the murder of Officer Gary Wilson (who was shot and killed by an armed assault suspect through a hotel room wall) and admits when he heard the shots, he testified he also thought, "officers get killed through doorways, and my thought was the only cop that's been killed in Duluth in the last 40 years was shot and killed through a wall and door."

64. With respect to paragraph 70 of the Complaint, this answering party denies the allegations.

65. With respect to paragraph 71 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies the same and puts Plaintiff to his strict burden of proof.

66. With respect to paragraph 72 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies the same and puts Plaintiff to his strict burden of proof.

67. With respect to paragraph 73 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies the same and puts Plaintiff to his strict burden of proof.

68. With respect to paragraph 74 of the Complaint, this answering party denies the allegations.

69. With respect to paragraph 75 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies and puts Plaintiff to his strict burden of proof.

70. With respect to paragraph 76 of the Complaint, this answering party admits the allegations.

71. With respect to paragraph 77 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies and puts Plaintiff to his strict burden of proof.

72. With respect to paragraph 78 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

73. With respect to paragraph 79 of the Complaint, this answering party denies the allegations and submits Plaintiff's statement, "Police Department shot me" demonstrates his knowledge police were at his door.

74. With respect to paragraph 80 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies and puts Plaintiff to his strict burden of proof.

75. With respect to paragraph 81 of the Complaint, this answering party admits on December 16, 2020, he was placed on off-duty status by the City of Duluth but is without sufficient information to admit or deny the content pasted by Plaintiff and therefore denies the same and puts Plaintiff to his strict burden of proof.

76. With respect to paragraph 82 of the Complaint, this answering party admits he was charged with felony intentional discharge of a firearm and felony second-degree assault with a dangerous weapon, a jury acquitted him on April 22, 2022, and he returned to work with the City of Duluth.

77. With respect to paragraph 83 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

78. With respect to paragraph 84 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies the same and puts Plaintiff to his strict burden of proof.

79. With respect to paragraph 85 of the Complaint, this answering party is without sufficient information to admit or deny the scope of Robert Shene's retention or Shene's length of employment with the police department but admits Plaintiff has inserted a portion of his trial testimony in the Complaint.

80. With respect to paragraph 86 of the Complaint, this answering party admits Plaintiff was struck near his right shoulder blade but is without sufficient information to admit or deny the source or accuracy of the photograph inserted in Plaintiff's Complaint and therefore denies the same and puts Plaintiff to his strict burden of proof.

81. With respect to paragraph 87 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies the same and puts Plaintiff to his strict burden of proof.

82. With respect to paragraph 88 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies and puts Plaintiff to his strict burden of proof.

83. With respect to paragraph 89 of the Complaint, this answering party denies the allegations and puts Plaintiff to his strict burden of proof.

84. With respect to paragraphs 90 - 96 of the Complaint, these allegations call for a legal conclusion and no response is required, but to the extent a response is required, this answering party denies and puts Plaintiff to his strict burden of proof.

85. With respect to paragraph 97 of the Complaint, this answering party is without sufficient information to admit or deny and therefore denies and puts Plaintiff to his strict burden of proof.

86. With respect to paragraphs 98 - 101 of the Complaint, this answering party denies the allegations.

87. With respect to Count One and paragraphs 102 - 107, this answering party denies the allegations.

88. With respect to Count Two and paragraphs 108 - 117, this allegation does not pertain to this answering party and no response is required.

89. This answering party is without sufficient information to form a belief as to the truth of Plaintiff's alleged damages and Relief Requested and therefore denies the same and puts Plaintiff to his strict burden of proof.

90. This answering party denies punitive damages are actionable or available for this incident.

91. This answering party affirmatively alleges Plaintiff's claims are barred by the legal doctrines of qualified, statutory, and official immunity.

92. This answering party affirmatively alleges Plaintiff's Complaint fails to state a cause of action for claims upon which relief can be granted.

93. This answering party affirmatively alleges the reasonableness of a particular use of force must be judged from the police officer's perspective, not Plaintiff's perspective, or based on 20/20 hindsight.

94. This answering party affirmatively alleges Plaintiff has failed to take reasonable action to avoid or mitigate any alleged detriment or damage.

95. This answering party affirmatively alleges Plaintiff's alleged injuries or damages were caused solely by reason of Plaintiff's own wrongdoing and/or misconduct and not by reason of any unlawful acts or omissions by Officer Leibfried.

96. This answering party affirmatively alleges that all actions taken by Officer Leibfried were legally reasonable, proper and necessary under the circumstances and authorized by the laws of the United States and State of Minnesota.

97. This answering party affirmatively alleges even if liable to Plaintiff under state law, liability for compensatory damages is limited in accordance with Minn. Stat. § 466.03, subd. 8 and § 466.04, subd. 1a.

98. As a separate affirmative defense to the allegations in the Complaint, this answering party alleges that the claims contained in Plaintiff's

Complaint may be barred by any or all of the affirmative defenses contemplated by Rule 8(c) of the Federal Rules of Civil Procedure. To the extent to which Plaintiff's claims may be barred by one or more of said affirmative defenses not specifically set forth above and cannot be determined until Officer Leibfried has had an opportunity to complete discovery, this answering party incorporates all said affirmative defenses as if fully set forth herein.

99. This answering party joins in Plaintiff's request for a jury trial.

**WHEREFORE,** this answering party prays Plaintiff take nothing by his claim for relief herein; that this answering party be given judgment against Plaintiff, dismissing Plaintiff's cause of action with prejudice; that this answering party be given judgment for costs, disbursements and attorney's fees herein pursuant to 42 U.S.C. § 1988 and for such other relief as the Court may deem just and equitable.

Dated: January 8, 2024

s/ Stephanie A. Angolkar
Stephanie A. Angolkar, #388336
Ashley M. Ramstad, #402446
IVERSON REUVERS
9321 Ensign Avenue South
Bloomington, MN  55438
(952) 548-7200
stephanie@iversonlaw.com
ashley@iversonlaw.com

*Attorneys for Defendant Officer Leibfried*